JOURNAL ENTRY and OPINION.
{¶ 1} Eugenia Rivers appeals her conviction for felonious assault. On appeal, she assigns the following assignments of error for our review:
 {¶ 2} "I. The trial court was without jurisdiction to conduct a bench trial because the requirements of R.C. 2945.05 were not strictly followed.
 {¶ 3} "II. The evidence was insufficient to sustain the conviction for felonious assault because there was insufficient evidence that Ms. Rivers possessed a `deadly weapon.'
 {¶ 4} "III. The conviction for felonious assault was against the manifest weight of the evidence.
 {¶ 5} "IV. The trial court erred by imposing a sentence of imprisonment for the offense of drug trafficking when Ms. Rivers was a first-time offender.
 {¶ 6} "V. The trial court erred when it failed to advise Ms. Rivers of the consequences attendant to the imposition of a term of post-release control."
 {¶ 7} Having reviewed the record and pertinent law, we affirm the judgment of the trial court, but remand for resentencing. The apposite facts follow.
 {¶ 8} Rivers was indicted on one count of felonious assault for her alleged assault of Suquanah Talley.
 {¶ 9} On August 14, 2002, immediately prior to the commencement of trial, Rivers waived her right to a jury trial. The record reflects that a written waiver was filed on the same date as the oral waiver and was journalized the next day. The following evidence was thereafter presented to the bench.
 {¶ 10} The bench trial began the same day, and Suquanah Talley testified on the evening of January 20, 2002, she was at the VIP bar located on East 93rd Street, with her friend Rochelle Johnson, Johnson's sister and Rivers, who was a friend of Johnson. While at the bar, Talley and Rivers got into a verbal confrontation, causing Talley and Johnson to leave. As Talley dropped Johnson off, she observed Rivers pull up behind her. Johnson got out of the car and Talley went home.
 {¶ 11} Talley testified that later, she, her sister Beatrice and Letasha and Marzella White decided to go dancing. Because Johnson wanted to join them, the group drove to Johnson's house. Upon arriving at Johnson's, Talley saw Rivers' truck in the driveway and pulled her vehicle in behind it. Johnson came out of the house and got in Talley's car to talk for a few minutes.
 {¶ 12} After Johnson went back inside the house, Rivers came out of the house with a broom, opened the driver's side door of Talley's car, and began jabbing Talley with the broomstick. According to Talley, she grabbed the broom from Rivers and then felt a sharp object against her right arm. All Talley saw was the metal tip under Rivers' sleeve. Talley dropped the broom and Rivers walked back into Johnson's house.
 {¶ 13} Talley drove to her mother's house and then to the Fourth District police headquarters. According to Talley, she was not bleeding a lot. She now has a scar on the inside of her arm about two inches long where she was stabbed. A photograph of the scar was admitted into evidence.
 {¶ 14} Letasha White testified she observed Rivers hitting Talley with the broom. White ran up to Talley's car and pushed Rivers away. At that time she saw that Rivers had a knife and she jumped back afraid of being stabbed. White described the knife as a "butcher knife" with a five-to-six inch long blade. She followed Talley to Talley's mother's house, and while there noticed Talley's right arm and thumb were bleeding, and that Talley had cuts on her pants.
 {¶ 15} Rochelle Johnson saw Rivers come out of the house with a broom. She never saw Rivers with the knife. Johnson, however, surmised that the knife that was allegedly used was a butcher knife taken from her house, because after the incident the knife was missing.
 {¶ 16} Officer Rochelle Waddell testified she spoke to Talley when she came to the police station at about 9:30 p.m. Waddell observed that Talley had a cut both on her right arm and thumb. The cut on her arm was about three-to-four inches long and the cut on the right thumb was about an inch long.
 {¶ 17} Detective Robert Pirinelli testified he investigated the altercation. When he questioned Rivers about what happened, she admitted to hitting Talley with the broom, but denied cutting her.
 {¶ 18} Rivers testified on her own behalf. She stated on the night in question, she was angry with Talley because when she apologized to Talley in the bar earlier, Talley spit in her face. According to Rivers, later as she was leaving Johnson's house with her two children, she saw Talley parked behind her truck. According to Rivers, she grabbed a broom for protection and asked Talley to move her car so she could leave. Rivers then saw two other girls approach the car and became frightened. According to Rivers, Talley then exited the car and swung at her. Rivers stated that she jabbed at Talley with a broom to keep her away. Rivers contended she did not have a knife in her hand, only her car keys.
 {¶ 19} Based on the above evidence, the trial court overruled defense counsel's motion for acquittal and found Rivers guilty as charged.
 {¶ 20} A sentencing hearing was conducted and Rivers was sentenced to two years for the felonious assault.[1]
 {¶ 21} In her first assigned error, Rivers argues the trial court lacked jurisdiction to proceed to trial without a jury because her signed waiver was not journalized until the day after the trial had concluded. Rivers argues strict compliance with R.C. 2945.05 mandates that an effective waiver must be journalized on the same day the defendant executes a signed waiver. We disagree.
 {¶ 22} R.C. 2945.05 provides that a jury waiver shall be in writing, signed by the defendant, and filed in the case and made a part of the record. The Ohio Supreme Court has stated that a failure to comply with the clear, unambiguous requirements of R.C. 2945.05 deprives the trial court of jurisdiction to conduct a defendant's trial without a jury.[2]
 {¶ 23} Rivers claims according to Pless, the journal entry must be journalized to be made part of the record prior to trial. However, the Court in Pless merely held that the waiver must be filed in accordance with R.C. 2945.05 before it is effective.
 {¶ 24} This court in State v. Sekera[3] was confronted with the identical issue as in the instant case. In Sekera, the defendant similarly argued that because the journal entry of the jury waiver was not journalized until after the trial had concluded, that the trial court lacked jurisdiction to proceed with a bench trial. This court, construing the holding in Pless held that "strict compliance with R.C. 2945.05 is met upon the filing of the waiver."[4]
 {¶ 25} Here, the record reflects Rivers signed a voluntary waiver of jury trial on August 14, 2002, the time stamp on the waiver indicates it was filed on August 14, 2002 and journalized on August 15, 2002. As we found in Sekera[5], the fact that the waiver was not journalized until after the trial concluded is not fatal. The trial court strictly complied with the mandates fo R.C. 2945.05 and Pless. Accordingly, the trial court was not divested of jurisdiction to proceed with a bench trial. The first assigned error is therefore overruled.
 {¶ 26} In her second and third assigned errors, Rivers argues that her felonious assault conviction was not supported by sufficient evidence and was against the manifest weight because there was no evidence presented that the Rivers' knife was a deadly weapon.
 {¶ 27} In State v. Jenks,[6] the court set forth the following standard for our review of a sufficiency challenge:
"An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt."
 {¶ 28} In reviewing a manifest weight of the evidence argument, our duty is to review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[7]
 {¶ 29} We recognize that the weight of the evidence and the credibility of witnesses are primarily issues for the jury, because the jury is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms in determining each witness's credibility.[8]
 {¶ 30} Pursuant to R.C. 2903.11(A)(2), felonious assault is defined as:
"(A) No person shall knowingly:
 (2) Cause or attempt to cause physical harm to another * * * by meansof a deadly weapon * * * or dangerous ordnance, as defined in section2923.11 of the Revised Code."
 {¶ 31} R.C. 2923.11 defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon."
 {¶ 32} A knife is not considered "in and of itself" to be a deadly weapon under the statute.[9] However, a knife is an instrument readily identifiable as one capable of inflicting death.[10] In the instant case, Letasha White testified that Rivers had a butcher knife with a five-to-six inch long blade that she was wielding as a weapon. This type of knife was most assuredly capable of inflicting death.
 {¶ 33} Therefore, based on this evidence, we reject Rivers' that the state's evidence in support of her felonious assault conviction is insufficient and against the manifest weight of the evidence, because there was sufficient, credible evidence that the butcher knife constituted a deadly weapon.
 {¶ 34} Accordingly, River's second and third assignments of error are overruled.
 {¶ 35} In her fourth assigned error, Rivers argues that the trial court erred by sentencing her to prison for her drug trafficking conviction, because it was her first-time offense.
 {¶ 36} Unfortunately, Rivers failed to file an appeal from CR. Case No. 422909, which is a separate case from the case on appeal. Therefore, pursuant to App.R. 3(D), we do not have jurisdiction to consider the trial court's sentencing regarding that offense.[11]
 {¶ 37} Accordingly, River's fourth assigned error is dismissed.
 {¶ 38} In her fifth assigned error, Rivers argues that because the trial court failed to notify her regarding the ramifications for violating the imposed post-release control sanction, it should be vacated.
 {¶ 39} In support of her argument that the post-release control sanction should be vacated, Rivers cites to various opinions from this court.[12] However, those cases are distinguishable, because in all of those cases, the trial court failed to advise the defendant entirely that post-release control sanctions applied once the sentence was served.
 {¶ 40} In the instant case, the record indicates that the trial court advised Rivers that she was subject to a three year post-release control sanction after her sentence was served. The trial court, however, failed to advise her of the ramifications for violating the post-release control. Since R.C. 2929.19(B)(3)(e) requires the trial court to notify an offender of the ramifications for violating the post-release control, the trial court erred by failing to do so.
 {¶ 41} Because the post-release control sanction was imposed at the time of sentencing, it need not be vacated from River's sentence. The matter is remanded, however, in order for the trial court to properly advise Rivers in accordance with R.C. 2929.19(B)(3)(e).[13]
Judgment affirmed in part; sentence remanded.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and JAMES J. SWEENEY, J., concur.
[1] At this time Rivers was also sentenced for three other charges committed in an unrelated, separate case, where Rivers pled guilty to one charge of drug trafficking and two counts of child endangering. Rivers was sentenced to six months for the drug trafficking charge and six months in jail for each of the child endangerment charges, with all the terms to run concurrently with the two year sentence for the felonious assault.
[2] State v. Pless (1996), 74 Ohio St.3d 333.
[3] Cuyahoga App. No. 80690, 2002-Ohio-5972.
[4] Id. at P23.
[5] Id.
[6] (1991), 61 Ohio St.3d 259, paragraph two of syllabus, citingJackson v. Virginia (1979), 443 U.S. 307.
[7] State v. Martin (1983), 20 Ohio App.3d 172, 175, citing Tubbs v.Florida (1982), 457 U.S. 31, 38. See, also, State v. Thompkins (1997),78 Ohio St.3d 380.
[8] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[9] Columbus v. Dawson (1986), 28 Ohio App.3d 45, 46.
[10] State v. Cannon, Cuyahoga App. No. 81799, 2003-Ohio-2195 (swiss army knife found to be a deadly weapon capable of inflicting fatal injury)
[11] App.R. 3(D); State Milhouse (May 9, 2002), Cuyahoga App. No. 79910; State v. Wilberger (Aug. 14, 1997), Cuyahoga App. No. 71373; Statev. Church (Nov. 2, 1995), Cuyahoga App. No. 68590.
[12] State v. Morrisey (Dec. 18, 2000), Cuyahoga. App. No. 77179; Statev. Fitch, Cuyahoga App. No. 79937, 2002-Ohio-4891; State v. Stell (May 16, 2002), Cuyahoga App. No. 79850.
[13] See, State v. Carter, Ninth Dist. No. 21212, 2003-Ohio-1131;State v. Martin (June 13, 2001), Ninth Dist. No. 20292.